IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Carolyn S. Lawson, | : | |
| Plaintiff | : | Civil Action 2:12-cv-00323 |
| v. | : | Judge Marbley |
| Carolyn Colvin, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

Plaintiff Carolyn S. Lawson brings this action under 42 U.S.C. §§405(g)  for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Lawson maintains that she became disabled in 2006, at age by, by depression and anxiety. The administrative law judge found that plaintiff Lawson retained the physical ability to perform work at all exertional levels. Mentally, she could understand, remember, and carry out simple as well as some multi-step tasks, concentrate on simple tasks, and perform work that is not fast paced and does not have strict production quotas. The work could involve no more than superficial or occasional interactions with others; and a non-public work setting with minimal social demands was preferable. Finally, plaintiff was able to cope with common changes in a familiar work setting. Given these limitations, the administrative

law judge found--based on a vocational expert's testimony--there were a significant

number of jobs in the national economy that Lawson could perform.

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge improperly evaluated the medical opinions by giving little to weight to Lawson's treating therapist;
- The administrative law judge violated plaintiff's due process rights by prohibiting her counsel to fully inquire into matters at issue; and,
- The administrative law judge failed to apply the grid rules properly.

**Procedural History.** Plaintiff Carolyn S. Lawson filed her application for

disability insurance benefits on February 27, 2009, alleging that she became disabled on

July 4, 2006, at age 51, by depression, panic attacks and high blood pressure. (R. 125,

130.) The application was denied initially and upon reconsideration. Plaintiff sought a

*de novo* hearing before an administrative law judge. On May 5, 2011, an administrative

law judge held a hearing at which plaintiff, represented by counsel, appeared and

testified. (R. 31.) A vocational expert also testified. On June 28, 2011, the

administrative law judge issued a decision finding that Lawson was not disabled within

the meaning of the Act. (R. 85.) On February 17, 2012, the Appeals Council denied

plaintiff's request for review and adopted the administrative law judge's decision as the

final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Carolyn S. Lawson was born May 16,

1955. (R. 125.) She has a high school education. She also completed training in

cosmetology and cake decorating (R. 135.) She has worked as a bartender, debt

collector,  delivery driver, dispatcher, cashier, driving instructor, and as a stay at home mom.  She last worked August 5, 2008.  (R. 130-31.)

**Plaintiff's Testimony.** Plaintiff testified that she still limped as a result of an injury to her ankle. She had a tendency to sway. She could not walk in a straight line. Her orthopedist told her that her bones had completely healed and that she needed to wear good support shoes.

Lawson testified that she did not know why she listed July 4, 2006 as the date she became disabled. In 2008, she worked for Weltman, Weinberg & Reese, a law firm. She worked for Harry & David in January of 2009.

Plaintiff's depression started in 1984 after her husband committed suicide. In 1987, her home burned down. When she was working at MRS, a collection agency, she had panic attacks and started breaking out in hives from the anxiety. In March 2008, she quit her job because of stress. After she stopped working, her stress stayed about the same. She continued to have panic attacks. For instance, when she went to the grocery store, she could only handle a few aisles at a time. She felt as through things were closing in on her and she would break out into a sweat. She was unable to go grocery shopping by herself. At times she had to leave the store before she was finished with her shopping. She stopped engaging in a lot of activities because of her panic attacks. For instance, she used to play euchre three or four times a week.

Plaintiff lived with her husband. Her husband was bedridden since having a stroke. A person from the senior citizen's building cared for him at their house. Her

neighbor cooked for them and ran the sweeper. Her son's girlfriend had been helping them. Lawson had difficulty doing these tasks because she could not stand for very long due to osteoporosis in her tailbone and lower back. In 1992, she was in an accident in which she was rear-ended by a truck.

Lawson reported difficulty concentrating. She could not take the stress of working in collections. She had panic attacks when she was around other people. She seldom had panic attacks when she was at home. She felt that her therapist was helping her.

Lawson testified that she was asked to leave Weltman because of the way she spoke to her supervisor. (R. 34-54.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

Donald A. DeShetler, M.D.. On July 23, 2004, plaintiff reported increased stress to Dr. DeShelter, her primary care physician. Her son was in prison. Lawson was not sleeping well. She felt on edge. She reported crying all the time and eating too much. (R. 216.) On February 14, 2005, plaintiff reported that her depression was well-controlled. (R. 213.) On July 6, 2005, Dr. DeShetler described Lawson's depression as pretty well-controlled. (R. 212.) On February 14, 2006, plaintiff complained of worsening depression. She had gained weight and wanted to sleep all the time. She was emotional and tearful. Plaintiff was not interested in therapy. (R. 211). On April 27, 2006, Dr.

4

DeShetler adjusted her antidepressant medications due to complaints of diarrhea. (R. 209.) On September 18, 2006, plaintiff was seen for depression. Plaintiff was under a lot of stress. Her son was in prison. Her husband was not very communicative. She had problems with gambling. She had to fight for visitation rights to see her grandchild. Dr. DeShetler indicated that she had significant depression. (R. 208.) On December 12, 2006, plaintiff complained of having hives. She could not identify an environmental cause, although she was under more stress at work. Dr. DeShetler believed that the hives were related to her increased stress. (R. 207.) On January 16, 2007, plaintiff reported she continued to have hives. (R. 206.)

On March 5, 2008, Dr. Dr DeShetler noted that plaintiff had quit her job due to stress. Although her bills were not being paid, she was taking her medications regularly and felt better overall. (R. 203.)  On February 19, 2009, plaintiff reported that her depression was pretty well controlled and that she was happy with her medications. She was described as being pretty active as a result of her move to a new apartment.  (R. 202.)

In November 16, 2010 letter, Dr. DeShetler noted that plaintiff's ability to work was limited by her depression. Despite medication, Lawson had significant depression that caused her great difficulty in the workplace. Lawson had difficulty dealing with pressure and criticism from her employer. She exhibited irritability, anger and frustration that escalated when exposed to ordinary work stress. Her symptoms improved after she stopped working. (R. 346.)

5

Dr. DeShetler opined that plaintiff could stand for 15 minutes at one time for two hours total. She could walk for 15 minutes at a time for two hours total. She could sit for six hours total. Dr. DeShetler opined that plaintiff could lift up to ten pounds. She could occasionally lift. She could not squat or climb ladders. Dr. DeShetler believed that plaintiff's condition would likely deteriorate if she were placed under stress. (R. 347-348.)

Dr. DeShetler also completed a questionnaire concerning plaintiff's mental residual functional capacity. Dr. DeShetler opined that plaintiff was extremely limited in her ability to accept instruction from or respond appropriately to criticism from supervisors. She was markedly impaired in her ability to perform and complete work tasks in a normal work day or work week at a consistent pace. She was moderately limited in her abilities to work in cooperation with or in proximity to others without being distracted by them or to maintain attention and concentration for more than brief periods of time. She was extremely limited in her ability to perform at production levels expected by most employers. Her abilities to respond appropriately to changes in the work setting; to behave predictably, reliably and in an emotionally stable manner; and to tolerate customary work pressures were extremely limited. She was moderately limited in her ability to remember locations, workday procedures and instructions.  Dr. DeShetler believed that plaintiff's condition would deteriorate if she were placed under the stress of a job. (R. 349-51.)

6

In January 7, 2010, Dr. DeShetler noted that plaintiff was tearful. She was going to explore counseling. He increased her dose of Welbutrin. (R. 377.) On November 17, 2010, Dr. DeShetler changed plaintiff's antidepressant. After completing plaintiff's disability forms, he concluded that her symptoms of depression and agitation might be better characterized as hypomania or bipolar disorder 2. He concluded that if the change in antidepressant was not successful, he would consider prescribing a mood stabilizer. (R. 370.)

Floyd Sours, M.A. On April 8, 2009, Mr. Sours, a consultative examiner, completed an evaluation at the request of the Bureau of Disability Determination. Plaintiff reported a history of panic attacks and depression. Her family doctor prescribed her medication, but she had no other mental health treatment.  On mental status examination, plaintiff exhibited a minimal range of emotion. She reported experiencing depression everyday for the past two weeks. She reported social withdrawal, poor concentration, loss of interest, fatigue, and irritability. She slept too much. She had no history of suicide attempts, but she has had suicidal ideation. He appetite was adequate to poor. Her anxiety was manageable when she was in her apartment. She had anxiety attacks when she was away from home. During an attack, she experienced rapid heartbeat, sweats, nausea, shortness of breath, and hot flashes.

Lawson was oriented in all four spheres. Her memory functioning was intact. Her cognitive functioning was in at least the low average category. Her insight and judgment were at least marginal. On a typical day, Lawson woke up at noon, took care

of her personal hygiene and drank coffee. She only got dressed if she was going out. Sometimes she did housework or the dishes. In the evening she watched television or played cards with her husband. She had no hobbies.

Mr. Sours diagnosed depressive disorder, not otherwise specified and panic disorder with agoraphobia. He assigned a Global Assessment of Functioning ("GAF") score of 61. Mr. Sours opined that plaintiff had no impairment in her abilities to understand or follow instructions. Lawson's ability to attend to tasks was mildly impaired. She was mildly impaired in her ability to withstand the stress and pressures associated with day-to-day work activities. (R. 194-97.)

Kevin Edwards, Ph.D. On May 4, 2009, Dr. Edwards, a state agency reviewing psychologist, completed a psychiatric review technique. Dr. Edwards noted the presence of depressive symptoms and an anxiety disorder. Dr. Edwards concluded that plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. She had no episodes of decompensation. Dr. Edwards concluded that plaintiff's statements concerning her mental health were not consistent with the evidence in the file and that her credibility was limited. (R. 236-49.)

R. Kevin Goeke, Ph.D. On July 16, 2009, Dr. Goeke, a state agency reviewing psychologist, completed a psychiatric review technique. Dr. Goeke noted that plaintiff was diagnosed with depression, not otherwise specified, and panic disorder without agoraphobia. He noted that plaintiff exhibited moderate restriction of daily activities,

8

moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. She had no episodes of decompensation. (R. 251-64.)

Dr. Goeke also completed a mental residual functional capacity assessment. Dr. Goeke opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions. With respect to sustained concentration and persistence, plaintiff was moderately limited in her abilities to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, plaintiff was moderately limited in her abilities to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Goeke opined that plaintiff was moderately impaired in her ability to respond appropriately to changes in the work setting.

Dr. Goeke noted that plaintiff was prescribed psychotropic medication by her primary care physician, but she had not history of psychiatric treatment. Dr. Goeke opined that plaintiff's cognitive functioning was sufficient to understand, remember, and carry out simple and some  multi-step tasks. She could concentrate on simple tasks and make basic work-related decisions. She could also sustain superficial or occasional

interactions with others. Her ability to interact frequently with the public was limited by her depression and anxiety. She should not be required to meet strict production quotas or cope with a fast-paced environment. (R. 265-68.)

On February 16, 2010, plaintiff underwent ankle surgery. (R. 272-309.)

J. Scott Craig, M.S., PCC-S. Mr. Craig, a professional clinical counselor, saw Lawson nine times from September 28, 2010 through March 7, 2011. Lawson either missed or canceled five appointments. Mr. Craig indicated that the lack of consistency in attending appointments was a barrier to a more effective assessment and treatment. Lawson's presenting problem was depression, but Mr. Craig ruled out major depressive disorder. Testing revealed that plaintiff had moderate depression, but it was not severe. She had no diagnosable anxiety disorder despite symptoms of agoraphobia and panic attacks.

Mr. Craig noted that Lawson's prominent clinical feature was a pervasive pattern of distrust and suspiciousness of others. She assumed others would exploit, harm, or deceive her. She was not able to offer evidence for these beliefs. Mr. Craig indicated that plaintiff met the criteria for paranoid personality disorder and that it would be difficult for her to maintain employment. Her ability to manage interpersonal relationships was greatly impaired. Mr. Craig diagnosed depressive disorder, not otherwise specified, and paranoid personality disorder. Mr. Craig assigned a GAF score of 50. (R. 352-53.)

Mr. Craig completed a questionnaire as to plaintiff's mental residual functional capacity. Mr. Craig opined that plaintiff was markedly limited in her abilities to accept

10

instruction from or respond appropriately to criticism from supervisors; to respond appropriately to co-workers or peers; and to relate to the general public and maintain socially appropriate behavior. She was moderately limited in her ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes. Lawson was moderately limited in her abilities to process subjective information accurately and to use appropriate judgment and to perform at production levels expected by most employers. With respect to adaption, plaintiff was moderately limited in her abilities to respond appropriately to changes in the work setting and to tolerate customary work pressures. She was markedly limited in her ability to behave predictably, reliably and in an emotionally stable manner. Mr. Craig believed that stress could increase her suspiciousness and hostility. (R. 354-56.)

**Administrative Law Judge's Findings.**

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since August 6, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: depression and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the

11

following nonexertional limitations: Mentally, the claimant is able to understand, remember, and carry out simple, and some multi step tasks, concentrate on simple tasks, and make basic work related decisions in a work setting that does not have strict production quotas, and is not fast paced. The claimant could sustain superficial or occasional interactions with others. A non-public work setting with minimal social demands would be preferable. The claimant can cope with common changes in a familiar work setting.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on May 16, 1955 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 6, 2008, through the date of this decision (20 CFR 404.1520(g)).

(R. 78-85.)

   **Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence,

shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge improperly evaluated the medical opinions by giving little to weight to plaintiff's treating sources. Plaintiff argues that the administrative law judge erred by failing to accord weight to plaintiff's treating therapist and by giving greater weight to the state agency reviewing psychologists. Plaintiff maintains that the administrative law judge failed to give good reasons for rejecting the

opinions of two treating sources in favor of the state agency reviewers. Plaintiff argues that "other sources" provide many of the evaluation and treatment functions handled by "acceptable medical sources" and that their opinions must be evaluated on issues concerning impairment severity and functional effects. Opinions from "other sources" can be accorded great weight. Plaintiff maintains that the administrative law judge failed to address the opinion of Mr. Craig because he was not an acceptable medical source. Mr. Craig is a supervising professional clinical counsel. He had an ongoing treatment relationship with plaintiff. His opinion was supported by a diagnosis obtained by using observed psychological signs, objective scales, and the American Psychiatric Association standards. His opinion was consistent with the opinions of Dr. DeShetler and Dr. Goeke. As a result, Mr. Craig's opinion was entitled to significant weight. Plaintiff argues that the administrative law judge misinterpreted the regulations and record in concluding that Mr. Craig was entitled to little weight. Plaintiff maintains that the administrative law judge failed to mention Social Security Ruling 06-3p or analyze Mr. Craig's opinion in accordance with 20 C.F.R. § 404.1527(d). Plaintiff further argues that the administrative law judge violated Social Security Ruling 96-6p by giving greater weight to the state agency reviewing consultants.

14

Plaintiff maintains that Dr. Goeke's opinion was not entitled to great weight because approximately 120 pages of additional medical records were submitted after his review, including 40 pages of treatment notes from Dr. DeShetler and Mr. Craig. After further treatment, Dr. DeShetler concluded that plaintiff was more severely impaired than he first believed and changed his diagnosis from depression to bipolar disorder type 2. Plaintiff further argues that even if plaintiff's treating sources were not entitled to controlling weight, the opinions were still entitled to deference and should be weighed according to the factors ser forth in 20 C.F.R. § 404.1527(d). An administrative law judge is required to give specific, good reasons fro rejecting the opinion of a treating physician, and a broad assertion that the opinion is not supported by the record is inadequate.

- <u>The administrative law judge violated plaintiff's due process rights by prohibiting her counsel to fully inquire into matters at issue</u>. Plaintiff maintains that a claimant is entitled to conduct questioning as needed to inquire fully into the matters at issue, and an administrative law judge should provide broad latitude in counsel's ability to question witnesses. Plaintiff argues that it was improper for the administrative law judge to cut off her attorney when he was questioning her about how her last job ended. Plaintiff maintains that the administrative law

judge made erroneous findings concerning alleged inconsistencies in Lawson's testimony and that these alleged inconsistencies would have been resolved had her attorney been permitted to continue his questioning. Lawson's counsel was also not permitted to fully question the vocational expert.

- The administrative law judge failed to apply the grid rules properly. Plaintiff argues that individuals of advanced age (55 or older) who are limited to light work, cannot perform their past work, and who do not have skills transferable to a significant range of semi-skilled or skilled work, are to be found disabled. If a claimant is within a few months of reaching an older age category and using the older age category would result in a decision that the claimant is disabled, the older age category will be considered after evaluating all of the factors in the case. Lawson turned 55 on May 16, 2010. At the time of the hearing, Lawson was less than two weeks from turning 56. As a result, Lawson was of advanced age. The administrative law judge incorrectly applied the grid rules for an individual approaching advanced age. Plaintiff maintains that under grid rule 202.00(c), a person of advanced age with only a high school education that is limited to light work and has no transferable skills is disabled. The administrative law judge elicited no testimony on the issue of transferability.

16

**Analysis.**  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medi-cal evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimus. Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Grayheart v. Commissioner of Social Security,* __ F.3d ____, _____, 2013 WL 896255, *14 (6th Cir. March 12, 2013).

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004)*; Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

18

clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in your case record, we will give it controlling

weight."  20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical

evidence and is not inconsistent with other substantial evidence, that ends the

analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[3]. *Grayheart v.*

*Commissioner of Social Security,* 710 F.3d 365, 375 (6th Cir. 2013). The

Commissioner's regulations require decision-makers "to provide 'good reasons'

for discounting the weight given to a treating-source opinion. [20 C.F.R.] §

404.1527(c)(2)."[4] *Grayheart,* 710 F.3d at 375.

The Commissioner has issued a policy statement, Social Security Ruling

92-6p, to guide decision-makers' assessment of treating-source opinion. It

emphasizes:

1. A case cannot be decided in reliance on a medical opinion
   without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate
   circumstances to medical opinions, *i.e.,* opinions on the

---

[3]Social Security Ruling 96-2p provides, in relevant part:

. . .

6. If a treating source's medical opinion is well-supported and not
   inconsistent with the other substantial evidence in the case record, it
   must be given controlling weight; *i.e.,* it must be adopted.

[4]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in
our notice of determination or decision for the weight we give your treating source's opinion."

issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons

not to give the treating-source opinion controlling weight.  20 C.F.R. §

404.1527(c)(2)[5]; *Grayheart,* above,710 F.3d at 376, 2013 WL 896255, \*10.

   If there are good reasons to find that the treating-source opinion is not

controlling, then the decision-maker turns to evaluating all the medical source

evidence and determining what weight to assign to each source, including the

treating sources[6]. The Commissioner's regulations require the decision-maker to

considers the length of the relationship and frequency of examination; nature

---

[5]Section 404.1527(c)(2) provides, in relevant part:
 If we find that a treating source's opinion on the issue(s) of the nature and
severity of your impairment(s) is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in your case record, we will give it
controlling weight. *When we do not give the treating source's opinion
controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and
(c)(2)(ii)* of this section, as well as the factors in paragraphs (c)(3) through
(c)(6) of this section in determining the weight to give the opinion

(Emphasis added.)

[6]Even when the treating source-opinion is not controlling, it may carry sufficient
weight to be adopted by the Commissioner:
Adjudicators must remember that a finding that a treating source medical
opinion is not well-supported by medically acceptable clinical and labora-
tory diagnostic techniques or is inconsistent with the other substantial
evidence in the case record means only that the opinion is not entitled to
"controlling weight," not that the opinion should be rejected. Treating
source medical opinions are still entitled to deference and must be weigh-
ed using all of the factors provided in 20 CFR 404.1527 and 416.927. In
many cases, a treating source's medical opinion will be entitled to the
greatest weight and should be adopted, even if it does not meet the test for
controlling weight.

SSR 96-2p.

and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through (6). Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  Even when the Commissioner determines not to give a treartor's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson,* 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There

remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

> <u>Treating Doctor: Discussion</u>.  The administrative law judge stated:
>
> Little weight is given to the opinion of the treating physician, Dr. DeShetler (Exhibit 12F), with regards to claimant's mental impairments as Dr. DeShetler was treated the claimant for her physical complaints, and responded to the claimant's complaints of mental impairments and problems with medications while she was still working. Furthermore, it is noted that Dr. DeShetler is not a trained specialist in the field of mental health. He is neither a psychologist nor a psychiatrist. Therefore, his opinion with regards to the diagnosis of mental impairments and the severity and limitations imposed by the mental impairments are given little weight.

(R. 83.) He also gave little weight to the opinions of Lawson's mental health counselor because they appeared to be based primarily on her subjective complaints and were "inconsistent with and unsupported by the objective medical evidence . . . ." *Id.* The administrative law judge read the counselor's treatment notes to state that Lawson was "basically back to normal with

treatment, with her depression having quickly resolved after treatment, and after a period of time, her anxiety as well (Exhibit 13F)." *Id.*

To be entitled to controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record.  Here, the administrative law judge failed to provide "good reasons" regarding either prong of the test for controlling weight. Instead, he administrative law judge skipped this two prong test altogether.

Although plaintiff was treated by Dr. DeShetler for physical complaints, he also treated her for depression and was the sole source of mental health treatment for a significant time. Dr. DeShetler's treatment notes document his objective findings concerning plaintiff's symptoms of depression. He noted Lawson's report of increased stress, poor sleep, complaints of edginess, crying episodes, and increased appetite. (R. 216.) On February 14, 2006, Lawson complained of worsening depression. Her symptoms included weight gain, excessive sleep, and tearfulness.(R. 211). Dr. DeShetler asked her if she would seek counseling. Additionally, he made several adjustments to her antidepressant medications. Dr. DeShetler noted in his treatment notes when plaintiff under a lot of stress and indicated that she suffered from significant depression. (R. 208.) Dr. DeShetler believed that plaintiff's hives were related to her increased stress.  (R. 207.) In his November 16, 2010 letter, Dr. DeShetler

24

noted that Lawson exhibited irritability, anger and frustration that escalated when exposed to ordinary work stress, although her symptoms improved after she stopped working. (R. 346.) In January 2010, Dr. DeShetler considered whether plaintiff's symptoms were accurately characterized as bipolar disorder 2 rather than depression. (R. 370.)

The administrative law judge provided no analysis of Dr. DeShetler's objective findings, nor did he identify what conflicting substantial evidence he relied on to reject Dr. DeShetler's opinion. Because the administrative law judge failed to provide good reasons for rejecting the opinion of Dr. DeShetler, I RECOMMEND that this case be REMANDED.

Plaintiff also argues that the administrative law judge failed to properly evaluate the opinion of Mr. Craig, plaintiff's counsel. A counselor or therapist working for a mental health care provider is not an acceptable medical source. 20 C.F.R. § 404.1513(a). Nonetheless, the Commissioner will consider evidence from other sources "to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d). Social Security Ruling 06-03p, 2006 WL 2329939, provides that the same factors used to evaluate the opinions of "acceptable medical sources," see 20 C.F.R. §§ 404.1427(d) and 416.927(d), "can be applied to opinion evidence from 'other sources.'" See, *Grayheart,* 710 F.3d at 378-79. Those factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
-  How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

SSR 06-03p. These factors "represent basic principles that apply to the consideration of all opinions from medical sources . . . who have seen the individual in their professional capacity." *Id.*

> With respect to Mr. Craig, the administrative law judge stated:

> The opinions provided by the claimant's mental health counselor (Exhibits 14F, 16F) with regards to the claimant's mental impairments, their severity, and the limitations they impose are given little weight because they appear to be based primarily on the claimant's subjective complaints, and they are inconsistent with and unsupported by the objective medical evidence of record, to include the counselor's own letter of explanation which said, in effect, that the claimant is basically back to normal with treatment, with her depression having quickly resolved shortly after treatment, and after a period of time, and her anxiety as well (Exhibit 13F). Additionally, these opinions are by the claimant's counselor, are by an individual who is not an "accepted medical treatment source," and do not compare to the weight of a medical opinion.

(R. 83.) The administrative law judge failed to evaluate Mr. Craig's opinion according to the factors in SSR 06-03p. Additionally, the administrative law judge description of Mr. Craig's opinion is not a fair characterization of his opinion. Mr. Craig noted that plaintiff's depression and anxiety were moderate. Although she did not meet the diagnostic criteria for either major depressive disorder or

generalized anxiety disorder, Mr. Craig did note the presence of agoraphobia

and that her symptoms of depression and anxiety were clinically significant.

Additionally, he diagnosed plaintiff with depressive disorder, not otherwise

specified. The administrative law judge, however, completely ignored Mr.

Craig's other findings:

> Ms. Lawson's most prominent clinical feature is a pervasive pattern of
> distrust and suspiciousness of others, When asked about this, she agrees
> that she assumes others will exploit, harm, or deceive her, but she is not
> able to offer much in the way of credible evidence for these beliefs. She
> meets the criteria for Paranoid Personality Disorder which the DSM-IV
> describes as follows, "Individuals with Paranoid Personality Disorder are
> generally difficult to get along with and often have problems with close
> relationships. Their excessive suspiciousness and hostility may be
> expressed on overt argumentativeness, in recurrent complaining, or by
> quiet, apparently hostile aloofness. In general, the prognosis is not
> promising for the treatment of the disorder, and, in my opinion,
> employment has been and would be very difficult for Carolyn. There are
> few, if any, jobs that did not require at least some interpersonal contact,
> and her ability to manage interpersonal relationships is greatly impaired.

(R. 352.)

Due Process. Plaintiff argues that her counsel was prohibiting from eliciting

further testimony from her and the vocational expert.  The transcript demonstrates that

the administrative law judge rather abruptly terminated counsel's examination of the

witnesses. Counsel, however, failed to note any objection on the record. As a result, it is

simply not clear whether or not the administrative law judge would have permitted

additional questioning by plaintiff's counsel. Absent a clear indication in the record, I

will not presume that the administrative law judge would have refused to permit counsel to question the witnesses further.

Application of the Medical-Vocational Guidelines.  Plaintiff argues that she should have been found disabled under grid rule 202.00(c) as a person with only a high education, limited to light work, and with no transferrable skills. Plaintiff, however, was not limited to light work. The administrative law judge concluded that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels. The administrative law judge formulated a residual functional capacity with only nonexertional limitations. The vocational expert's identification of jobs in the light exertion category was not based on a restriction to light work.

In her reply, plaintiff further argues that the administrative law judge failed to comply with Social Securing Ruling 85-15, which requires consideration of a claimant's vocational factors or age, education, and work experience in addition to her residual functional capacity when evaluating solely nonexertional impairments. Under SSR 85-15, the first issue is "how much the person's occupational base–the entire exertional span from sedentary work through heavy (or very heavy work)–is reduced by the effects of the nonexertional impairment(s)." The reduction will vary depending on the nature and extent of the individual's impairments. The second is "whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, and work experience." Here, the administrative law judge failed to considered the impact of plaintiff's age,

28

education and work experience in determining whether jobs exist in significant numbers in the national economy that Lawson could perform. On remand, the administrative law judge should consider plaintiff's vocational factors in accordance with SSR 85-15.

From a review of the record as a whole, I RECOMMEND that this case be REMANDED. On remand, the administrative law judge should determine if there are good reasons to find that Dr. DeShetler's opinion is not controlling, and if it is not, then the administrative law judge should evaluate all the medical source evidence and determine what weight to assign to each source, including the treating sources. *Grayheart,* 710 F.3d at 375-76. The administrative law judge should also evaluate Mr. Craig's opinion in accordance with SSR 06-03p and consider plaintiff's vocational factors in accordance with SSR 85-15.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


    s/Mark R.  Abel             
United States Magistrate Judge